THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH POWELL,                          :
                                         :
            Plaintiff,                   :        3:25-CV-148
                                         :        (JUDGE MARIANI)
      v.                                 :
                                         :
TENSIK INDUSTRIES, LLC and               :
EFSA HOLDING GROUP, LLC                  :
                                         :
            Defendants.                  :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Plaintiff Kenneth Powell's Motion for Default Judgment

(Doc. 15). For the reasons discussed below, the Court will grant Plaintiff's motion as set

forth herein.

On January 23, 2025, Plaintiff filed a Complaint against Defendants Tensik

Industries LLC and EFSA Holding Group LLC alleging Breach of Contract under Florida law

(Counts I, II), Unjust Enrichment (Count III), violation of Florida statutory law (Count IV), and

Breach of Duty of Good Faith and Fair Dealing (Count V). (Doc. 1).

Plaintiff filed a Waiver of the Service of Summons on April 25, 2025, which

established that Defendants' responsive pleadings were due within 60 days from April 16,

2025, i.e. on or before June 16, 2025. (See Doc. 7). However, on May 6, 2025, Plaintiff

filed a Motion to Stay the Case (Doc. 8) informing the Court that the parties had reached a

resolution and requesting that the action be stayed until September 15, 2025 "in order to

give Defendants time to build and deliver a new plant to Plaintiff which would resolve this

case" (*id.* at ¶ 8). The Court granted this motion (Doc. 9). On October 6, 2025, following an

Order by this Court requesting an update on the status of the case, Plaintiff's counsel

informed the Court that Defendants "have not complied with the terms of a settlement

agreement" and that Defendants had not responded to Plaintiff's counsel's correspondence

as to when the defendants "could deliver the long-overdue mobile concrete batching plant to

Plaintiff." (Doc. 11).

As of the date of this Order, neither Defendant has filed neither an Answer nor other

responsive pleading and no counsel has entered an appearance on behalf of the

defendants.

On October 16, 2025, Plaintiff filed a request "Request for Default Judgment" (Doc.

13) and the Clerk of Court entered default against the defendants on October 20, 2025

(Doc. 14). The Clerk of Court having entered default, Plaintiff filed a "Motion for Default

Judgment" (Doc. 15), pursuant to Fed. R. Civ. P. 55(b), supporting Affidavit (Doc. 15, at 2-

5), and supporting brief (Doc. 16).

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[w]hen a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default". Fed. R.

Civ. P. 55(a). Upon the party's request, the clerk of court may then enter default judgment, but only if the claim is for a sum certain or one that can be made certain by computation, the defendant has made no appearance, and the defendant is not a minor or incompetent. *Id.* at 55(b)(1). In all other cases, the party seeking a default judgment must make an application to the court. *Id.* at 55(b)(2).

Although the entry of default judgment is "left primarily to the discretion of the district court", the discretion is not limitless given that cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-1181 (3d Cir. 1984). "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n. 6 (quoting *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990)).

In determining whether to grant a motion for default judgment, a Court must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

3

## III. ANALYSIS

## A. The Entry of Default Judgment

Here, Plaintiff Powell has satisfied all of the requirements necessary to obtain a default judgment against Defendants.  In light of the lack of any response or action on the part of the defendants, the Court must accept the following key factual allegations as true:

Tensik is a designer and manufacturer of mobile concrete batch plants.

Tensik specializes in producing mobile concrete batch plants for reliable on-site concrete production.

Tensik markets and sells concrete batch plant products to Pennsylvania citizens and throughout the United States.

Plaintiff is a real estate developer and intended to purchase a mobile concrete batch plant to use in his business in Pennsylvania.

Plaintiff found Tensik and EFSA on the internet and contacted its CEO Eduardo Fuenmayor about purchasing a mobile concrete batch plant for his real estate development business in Pennsylvania.

Plaintiff and Mr. Fuenmayor had communications by phone and email during which they conducted negotiations for Plaintiff to purchase of a new mobile concrete batch plant from Plaintiff in return for Plaintiff paying $395,000 to Tensik and/or EFSA.

On or about February 16, 2023, Defendants prepared and sent a written proposal to Plaintiff for a new mobile concrete batch plant to be manufactured for Plaintiff. The proposal explicitly identifies Tensik and EFSA on the proposal [hereinafter "the Contract"].

According to the Contract, Defendants proposed that it would design, manufacture, produce, deliver and set-up a brand-new Pro Mobile 1-S Concrete Batching Plant, . . . ship the Plant to Plaintiff's location in Lackawanna County, Pennsylvania, and provide training at Plaintiff's development in

4

Pennsylvania to operate the Plant in exchange for payments to Defendants totaling $395,000.

Plaintiff signed the Contract . . . and fully accepted its terms and conditions and forwarded it to Defendants on February 16, 2023.

Defendants accepted the signed Contract . . . and Tensik and/or EFSA immediately sent Plaintiff an invoice requesting a 50% payment ($197,500) as required by the Contract.

The Contract states if "Payment is received by Friday, February 17, 2023, plant will be delivered by 4/21/2023".

On February 16, 2023, Plaintiff wired Tensik and/or EFSA a $197,500.00 payment as invoiced.

Plaintiff's 50% payment was received by Tenski and/or EFSA before February 17, 2023 thus making Defendants' due date to deliver the Plant to Plaintiff by 4/21/2023.

Tenski and/or EFSA then sent an invoice dated March 27, 2023 to Plaintiff requesting a 20% payment amounting to $79,000.00.

On April 7, 2023, Plaintiff wired Tenski and/or EFSA a $79,000.00 payment as invoiced.

Tenski and/or EFSA next sent Plaintiff an invoice dated May 9, 2023 requesting a payment in the amount of $50,000.00.

On May 11, 2023, Plaintiff wired Tenski and/or EFSA a $50,000.00 payment as invoiced.

Tenski and/or EFSA sent Plaintiff an invoice dated May 19, 2023 requesting a payment in the amount of $50,000.00.

On May 22, 2023, Plaintiff wired Tenski and/or EFSA a $50,000.00 payment as invoiced.

Tenski and/or EFSA advised Plaintiff the new mobile concrete batch plant would be delivered to Plaintiff in Pennsylvania.

5

Tenski and/or EFSA did not invoice Plaintiff for the final payment of $18,500.

Plaintiff wrote to Mr. Fuenmayor, Defendants' CEO, and advised him the final payment for the Plant will be paid at delivery and setup of the Plant.

Defendants stated no objection to a final payment being made upon delivery and set-up.

Defendants reportedly contracted a transport company to deliver the completed Plant to Plaintiff's location in Pennsylvania.

Defendants next reported to Plaintiff the transporter of the Plant was involved in a vehicular accident on or about June 26, 2023 and the Plant sustained substantial damage.

Mr. Fuenmayor, Defendants' CEO, communicated to Plaintiff that the Plant would be repaired and then delivered to Plaintiff in Pennsylvania.

Plaintiff advised Defendants' CEO that he did not want a "repaired" Plant, and that []he expected a new Plant as specified in the Contract.

Defendants failed to provide a new Plant to Plaintiff as required by the Contract.

Defendants have failed to provide Plaintiff with a new Plant or even a repaired Plant at any time.

Plaintiff's counsel wrote to Defendants' CEO, Mr. Fuenmayor, on September 12, 2023, notifying Defendants of their breach of contract due to their failure to deliver the new Plant to Plaintiff, and requesting the return of all funds paid by Plaintiff, $376,500.

On September 12, 2023, CEO Fuenmayor responded to Plaintiff's counsel stating the company transporting the plant to Plaintiff back in June 2023 had no insurance and therefore Defendants were taking legal action against the broker and transport company.

Mr. Fuenmayor's September 12, 2023 email further stated Defendants are actively working on repairing the damaged Plant to eventually list it for sale and secure funds to reimburse Plaintiff for funds he paid to Defendants.

6

Defendants have never advised Plaintiff they completed any repairs on the Plant.

On October 19, 2023, Plaintiff's counsel wrote to Defendants requesting the status of Plaintiff being repaid the $376,500 which he paid for the undelivered Plant.

In the months after October 2023, Plaintiff had direct communications with CEO Fuenmayor wherein he promised to refund Plaintiff the $376,500 he had paid to Tensik and/or EFSA.

No funds have ever been returned to Plaintiff by Defendants.

On July 19, 2024, Plaintiff's counsel again wrote to Mr. Fuenmayor requesting his plan to refund the $376,500 to Plaintiff and warning him that a federal lawsuit would be commenced if Defendants continue to ignore the matter.

Mr. Fuenmayor on behalf of Defendants responded to Plaintiff's counsel on July 28, 202[4] and wrote: "Please give me 10 days. You are right, and I am not going to make false promises. We are currently working with a bank and finishing some projects to provide you with a realistic payment plan. Our intention is certainly to resolve this, but it has gotten out of hand while trying to make a single payment."

On August 13, 2024, Mr. Fuenmayor on behalf of Defendants wrote to Plaintiff's counsel as follows: "I have secured $50K for the first week of September and another $50K for the first week of October. I am working to have everything completed by November. Hits been very slow."

Plaintiff's counsel responded to Mr. Fuenmayor's August 13, 2024 email as follows: "Thank you Eduardo. Mr. Powell will agree to this and hold off instituting a lawsuit as long as you comply with this arrangement exactly as you stated. I will look forward to hearing from you the week of 9/3/24. Please understand that this will be the very last compromise he will make before moving forward with a lawsuit, which we hope will not be necessary."

On September 5, 2024 Plaintiff's counsel emailed Mr. Fuenmayor on behalf of Defendants to make sure payment will be received by September 6, 2024.

Mr. Fuenmayor on behalf of Defendants responded to Plaintiff's counsel on September 9, 2024 and wrote: "Rick [Attorney Richard Fanucci] the check is delay but expecting to arrive this week. I will keep you posted as soon we get it I will wire."

On December 9, 2024 Plaintiff's counsel sent Defendants an email letter stating he will be filing a lawsuit in federal court for breach of contract and fraud in the next 20 days.

Defendants never responded to Plaintiff counsel's December 9, 2024 letter.

(Doc. 1, at ¶¶ 9-18, 20-27, 30-55).

Plaintiff's factual allegations are supported by the following exhibits attached to the Complaint: (A) the Contract; (B) Defendants' invoices to Plaintiff; and (C)-(L) Emails quoted in the Complaint between Plaintiff's counsel and Mr. Fuenmayor.

In considering the factors necessary to decide whether default judgement is appropriate, the Court first notes that the record demonstrates that that the defendants were served with the Complaint and signed a Waiver of the Service of Summons on April 22, 2025 (Doc. 7). Since that time, no counsel has entered an appearance on behalf of the defendants and no defendant has filed any documents of record or otherwise taken any action to defend this action on the record. The Clerk of Court thus entered default against the defendants on October 20, 2025. (Doc. 14).

With respect to the prejudice to Plaintiff Powell if default is denied, this factor weighs in favor of the plaintiff. Absent the default judgment, the plaintiff will be faced with an indefinite, and possibly permanent, delay in the adjudication of his claims and is left with no

alternative means to vindicate his claims against the defaulting parties, including obtaining the damages he alleges he is owed.

As to whether the defendants appear to have a litigable defense, this factor also weighs in favor of the plaintiff. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). In the present action, neither of the defendants has filed an answer or performed any other action to defend the case or set forth a meritorious defense. Further, upon review of the factual allegations which this Court must accept as true, the Court is not aware of one or more possible defenses which may constitute a complete defense in this action.

The third factor, whether defendants' delay is due to culpable conduct, also weighs strongly in favor of Plaintiff. "In this context culpable conduct means action taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). The defaulting defendants, Tensik Industries LLC and EFSA Holding Group LLC, have all been on notice of this legal action since at the latest, April 22, 2025, when they executed the Waiver of the Service of Summons. (*See* Doc. 7). Thus, the defendants have failed to respond or take any other formal action to defend this lawsuit for over 8 months. Further, as demonstrated by Plaintiff's motion to stay (Doc. 8), Plaintiff's counsel's letter to the Court

(Doc. 11), and Plaintiff's motion for default judgment and accompanying Affidavit (Doc. 15), all addressing the parties' attempts to resolve this action, the record clearly reflects that defendants are aware of the pending lawsuit, as well as the motion for default judgment, and have affirmatively chosen not to defend this action.  Defendants' lack of action to respond to Plaintiff's lawsuit or otherwise defend the action on the record plainly amounts to deliberate and willful conduct.

Therefore, default judgment will be entered against Tensik Industries LLC and EFSA Holding Group LLC.

## B. Damages

Pursuant to the Federal Rules of Civil Procedure, a Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 50(b)(2).

Here, Plaintiff's Complaint requests judgment in an amount "in excess of $376,500 together with an award of compensatory and punitive damages and such other and further relief permitted by law. . ." (Doc. 1).  Plaintiff's Motion for Default Judgment request "entry of a judgment order in the amount of $379,498.62 against Defendants." (Doc. 15, at 1).  As detailed in Plaintiff's counsel's accompanying Affidavit, this amount is calculated as follows:

| | |
|---|---|
| Amount paid to Defendants for Plant | $376,500.00 |
| Attorney's fees and filing fee | $2,998.62 |
| | **$379,498.62** |

(Doc. 15, ¶ 17).

The Court does not take as true the moving party's factual allegations or legal

conclusions relating to the amount of damages as set forth in the Complaint, *Comdyne I,*

*Inc.,* 908 F.2d at 1149.  However, Plaintiff's request for an amount of $376,500 is supported

by the terms of the Contract (Doc. 1, Ex. A) and the four invoices from Defendant Tensik

Industries in the amounts of $197,500; $79,000; $50,000; and $50,000 (*id.* at Ex. B).  The

emails between Plaintiff's counsel and Mr. Fuenmayor, on behalf of Tensik Industries, also

establish that Defendants do not dispute that they owe Plaintiff payment for their failure to

deliver the concrete plant agreed to in the Contract.  (*See e.g.,* Doc. 1, Ex. G (email from

Mr. Fuenmayor stating that "[w]e are currently working with a bank and finishing some

projects to provide you with a realistic payment plan [and o]ur intention is certainly to

resolve this, but it has gotten out of hand while trying to make a single payment.").

In addition to the $376,500 asserted in the Complaint and Plaintiff's counsel's

Affidavit, Plaintiff's motion for default judgment requests that the Court award $2,998.62 for

attorney's fees and the fee for filing.  (Doc. 15, ¶ 17).

Pursuant to Federal Rule of Civil Procedure 54, subject to limited exceptions not

applicable here, "costs – other than attorney's fees – should be allowed to the prevailing

party."  Fed. R. Civ. P. 54(d)(1).  Here, where this Court will grant Plaintiff's motion for

default judgment and enter judgment in favor of Plaintiff and against the defendants, Powell

is the prevailing party. Additionally, the docket sheet in this action confirms that Plaintiff

paid a filing fee of $405 on the day the action was filed in federal court. (*See* docket

annotation at Doc. 1). Therefore, the Court will award $405 for the cost of filing this action.

However, Plaintiff has not provided any legal basis for a finding that he is entitled to

attorney's fees under the applicable laws of Florida and Pennsylvania for the claims set

forth in the Complaint. *See e.g. Chin v. Chrysler, LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (". .

. for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state

law."). Plaintiff has additionally failed to submit any documentation to support his request

for $2,593.62 in attorney's fees or to even set forth a calculation of his attorney's fees in the

accompanying Affidavit. The Court will thus deny Plaintiff's request for $2,593.62 in

attorney's fees.

Accordingly, the Court will grant Plaintiff's motion for default judgment in the amount

of $376,905 and deny Plaintiff's request for an additional $2,593.62 for attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff Powell's Motion for Default

Judgment (Doc. 15) as set forth herein and enter default judgment in the amount of

$376,905.

Robert D. Mariani
United States District Judge